JOHN HENRY SMITH *v.* STATE OF MARYLAND

[No. 14, September Term, 1975.]

*Decided April 12, 1976.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*Stephen A. Tarrant, Assigned Public Defender*, for appellant.

*Arrie W. Davis, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Donaldson C. Cole, State's Attorney for Cecil County, Edwin H. W. Harlan, Jr., State's Attorney for Harford County* and *Peter C. Cobb, Assistant State's Attorney for Harford County* on the brief, for appellee.

MASON, J., delivered the opinion of the Court.

The appellant, John Henry Smith, was tried before a jury in the Circuit Court for Cecil County [1] and convicted of two counts of murder and two counts of arson. He was sentenced to life imprisonment for each of the murder counts, the terms to be served concurrently. For the arson counts, he was sentenced to two thirty year terms which were to run concurrently with each other, but consecutively to the sentences imposed for the murder counts.

The crimes for which the appellant was convicted stemmed from the burning of Gene's Bar and Restaurant in Forest Hill, Harford County, during the early morning hours of January 30, 1972. The building — a single structure with the bar and restaurant on the lower floor and family dwelling quarters on the upper floor — was completely destroyed. At the time of the fire, the bar and restaurant

---

1. On July 11, 1973, appellant moved for dismissal on the ground that he had been denied a speedy trial. The motion was denied and appellant took an interlocutory appeal to this court.

In a per curiam opinion filed May 23, 1974 (No. 687, September Term, 1973) we dismissed the appeal as premature. The Court of Appeals denied appellant's petition for writ of certiorari on November 7, 1974. (Miscellaneous docket, No. 176, Criminal).

On October 4, 1974, the appellant filed a second interlocutory appeal, this time challenging the removal to Cecil County of a subsequent indictment. We granted the State's motion to dismiss that appeal on December 12, 1974. (No. 773, September Term, 1974).

had closed for the night and seven persons were sleeping in the living quarters. Five persons managed to escape but the bodies of Rosalie Ann Poe, age fifteen, and Diane Elizabeth Reichert, age eighteen, were found in the debris, burned beyond recognition.

On appeal five issues are raised:

I. Whether a second and subsequent indictment on the arson charges could properly be removed to Cecil County, over the objections of the appellant, for consolidation with the other charges pending against appellant.

II. Whether appellant's conviction of two counts of arson for the burning of a single building constitutes double jeopardy.

III. Whether appellant's motion for acquittal in regard to the murder charges should have been granted on the basis that the State failed to prove the corpus delicti of the alleged crimes.

IV. Whether the Miranda warning given appellant was so defective that the trial court erred in admitting, over appellant's objection, certain statements made by the appellant while in police custody.

V. Whether the trial court erred in refusing to admit the results of a "psychological stress evaluation" test proffered by appellant.

We consider these issues in order.

## I.

### REMOVAL OF THE SUBSEQUENT INDICTMENT

Article IV, Section 8 of the Constitution of Maryland provides in relevant part:

> . . . in all cases of Presentments or indictments for offences, which are or may be punishable by death, pending in any of the courts of law in this State having jurisdiction thereof upon suggestion in writing under oath of either of the parties to said proceedings that such party cannot have a fair and impartial trial in the court in which the same may

be pending, the said court shall order and direct the record of proceedings in such suit or action, issue presentment, or indictment, to be transmitted to some other court having jurisdiction in such case for trial, but in all other cases of presentment or indictment, pending in any of the Courts of law in this State having jurisdiction thereof, in addition to the suggestion in writing of either of the parties to such presentment or indictment that such party cannot have a fair and impartial trial in the court in which the same may be pending, it shall be necessary for the party making such suggestion to make it satisfactorily appear to the Court that such suggestion is true, or that there is reasonable ground for the same, And thereupon the said court shall order and direct the record of proceedings in such presentment or indictment to be transmitted to some other Court having jurisdiction in such cases for trial . . . .

This constitutional provision has been embodied in Maryland Rules 542 [2] and 738.

On January 30, 1973, the grand jury for Harford County returned three indictments, charging the appellant with the murder of Diane Reichert, the murder of Rosalie Ann Poe, and the arson of a dwelling house. On July 11, 1973, the appellant filed a motion for removal under Maryland Rule 738 [3] in which he claimed he could not receive a fair and impartial trial in Harford County. The motion was granted and the case was transferred to Cecil County. On April 6, 1974, the grand jury for Harford County returned an additional ten count indictment against the appellant. This

---

**2.** The automatic removal provision of the Maryland Constitution as applied to civil litigants was held unenforceable under the equal protection clause of the United States Constitution. *Davidson v. Miller*, 276 Md. 54 (1975).

**3.** In *Bartholomey v. State*, 267 Md. 175 (1972), death sentences under existing discretionary statutes of Maryland were declared unconstitutional. In *Johnson v. State*, 271 Md. 189 (1974), the Court of Appeals held that there was no absolute right of removal in cases formerly punishable by death. Art. 27, § 413, effective 7/1/75, provides for the imposition of the death sentence in eight enumerated situations.

indictment arose out of the same factual circumstances as the first indictments and was apparently obtained because the State believed the first arson indictment may have been defective. The new indictment charged several counts of arson and related burning offenses and one count of burglary.

The State, under Maryland Rule 725 (Motion for Appropriate Relief) moved to transfer the new indictment to Cecil County in order that it could be consolidated with the other indictments by proper motion in that court. The appellant objected to the granting of this motion, claiming the additional indictment was a new case in which the State, in order to transfer it, had to comply with Maryland Rule 738 and file a suggestion under oath that it could not receive a fair and impartial trial in Harford County. The State indicated it could not in good conscience make such an affidavit. The motion was granted and the new indictment was transferred to Cecil County. Prior to trial in Cecil County, the State entered a nolle prosequi to the first arson indictment and substituted, in lieu thereof, the new arson indictment.

The issue is whether the subsequent indictment containing non-capital offenses arising out of the same indictment was properly removed. In *Stevenson and Borum v. State*, 9 Md. App. 152, 263 A. 2d 36 (1970), this Court held that where the defendant exercises his absolute right to removal of the capital charge the other non-capital previously consolidated charges are carried along. In that case, however, both the capital and non-capital offenses were removed at the same time. See also *State v. Coffield*, 17 Md. App. 305, 301 A. 2d 44 (1973). In the present case, the capital and non-capital charges were removed on July 11, 1973, but the additional charges were not removed until September 25, 1974.

As a general rule, the effect of a change of venue in a criminal case is to remove the cause absolutely from the jurisdiction of the court granting the change, except for curing irregularities or omissions in the record. Further, the court to which the indictment has been transferred is not

divested of jurisdiction by dismissal, nolle prosequi or mistrial, and it retains exclusive jurisdiction to try the case after a new indictment for the same offense has been returned. 21 Am. Jur., Criminal Law, §§ 431, 434 (1965).

Although the cases are few, there is authority in other jurisdictions which hold that a subsequent indictment can be transferred to a removee court without the necessity of complying with the statutory provisions authorizing removal. In *Ex parte Lancaster*, 206 Ala. 60, 89 So. 721 (1921), a change of venue in a murder prosecution was ordered. The trial in the removee court resulted in a mistrial and a nolle prosequi was entered. The accused was re-indicted in the court of original jurisdiction, and he sought to prevent trial in that court. The State resisted, claiming that the jurisdiction of the removee court was divested by the entering of a nolle prosequi in the case. The State further contended that if the accused wanted his case transferred to another court, he would have to file another application for removal. The court held:

> When the change of venue was granted for the trial of the defendant for this offense to Marion county, the statute contemplates that Marion county is the only one in which the trial of the defendant for that offense may be had, regardless of the number of the indictments that may afterwards be preferred against him for the same offense.

See also Annot. 85 A.L.R.2d 997 (1962). *Cf. State ex rel. English v. Normile,* 108 Mo. 121, 18 S. W. 975 (1892), where the court held that the finding of a new indictment was not an amendment of the pleadings in the pending case, but was the recommencement of the prosecution which could only be done in the court having original jurisdiction.

We think the better rule is that once an order for removal has been granted in a criminal case, jurisdiction in the transferring court to try the case ends. Thereafter, all subsequent indictments for the same offense, or founded upon the same transaction, should be transmitted to the transferee court without the necessity of complying with the

provisions of Maryland Rule 738. Furthermore, if a nolle prosequi of the original indictment or any count contained therein is entered in the transferee court, this fact does not reinvest jurisdiction for the trial of the new indictment in the court of original jurisdiction. To hold otherwise would mean that once a case has been removed the prosecution could not effectively correct a defective indictment or bring additional charges. It would also permit the prosecution, for all intents and purposes, to nullify the removal statute by entering a nolle prosequi to an indictment that has been ordered removed. We hold, therefore, that the removal by the appellant of his case from Harford County to Cecil County because he could not receive a fair and impartial trial fixed, at that point, the place of venue in Cecil County, not only for the original indictment, but also for the subsequent indictment.

## II.

### DOUBLE PUNISHMENT

Article 27, § 6 of the Annotated Code of Maryland provides in part:

> Any person who . . . sets fire to or burns . . . any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto . . . shall be guilty of arson . . . .

The appellant was convicted under Counts One and Three of the arson indictment, which charge in part:

### Count One

> . . . John Henry Smith . . . unlawfully did willfully and maliciously set fire to and burn and cause to be burned a certain dwelling house . . . of Milton Eugene Poe, Sr. . . . .

### Count Three

> . . . John Henry Smith . . . on the said day, in the

> said year ... unlawfully did willfully and maliciously set fire to and burn and cause to be burned a certain shop ... t/a Gene's Bar and Grill, said shop being parcel of, belonging to, and adjoining a certain dwelling of Milton Eugene Poe, Sr. . . .

The building the appellant was convicted of burning was a single structure which served a dual purpose. On the first floor Milton Eugene Poe, Sr., operated a bar and restaurant. On the second floor he resided with his wife and four children. Between the two floors there was an inside stairway which provided access and communication.

The pivotal question is whether the single act of burning one building housing a bar and restaurant on the first floor and a dwelling on the second floor constitutes one or two offenses under § 6, *supra*.[4]

In judging whether crimes set forth in different counts of an indictment are the same we must determine, "whether each count so set up constitutes the same elements and would require the same evidence to convict. If such is the case, then the counts charged the same crime, but if such is not so, the counts would charge a different crime." *Weinecke v. State*, 188 Md. 172, 177, 52 A. 2d 73 (1947). In *Thomas v. State*, 277 Md. 257, 353 A. 2d 240 (1976), the Court of Appeals after a comprehensive review of the federal and state laws on the issues of double jeopardy observed:

> Certain principles concerning the required evidence or same evidence test emerge from the cases. The required evidence is that which is minimally necessary to secure a conviction for each statutory offense. If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, the offenses are not the same for double

---

4. Inexplicably both the appellant and appellee briefed and argued this issue on an incorrect assumption that the appellant had been convicted under Article 27, §§ 6 and 7. Apparently neither looked at the indictment. See *Haslup v. State*, 30 Md. App. 230, 351 A. 2d 181 (1976).

jeopardy purposes even though arising from the same conduct or episode. But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, the offenses are deemed to be the same for double jeopardy purposes. And of course if both statutes have exactly the same elements, the offenses are also the same within the meaning of the prohibition against double jeopardy, and successive prosecutions are barred.

At common law the term dwelling house comprehended not only the mansion house but all outhouses which were a parcel thereof. 5 Am. Jur. 2d Arson, § 19 (1962). Further, it is a well settled common law doctrine that a building in order to constitute a dwelling house need not be used exclusively for that purpose. The use of one part of the building as a dwelling gives the character of a dwelling house to the entire building if there is internal communication between the part used for dwelling purposes and the part used for other purposes. *United States v. Cardish*, 145 F. 242 (D. Wisc. 1906).

Here, the appellant, in a single act, burned one building which included a dwelling and a shop that was a parcel thereof. In *Butina v. State*, 4 Md. App. 312, 317, 242 A. 2d 819 (1968), this court stated that under § 6, supra, a person commits arson if he sets fire to or burns or causes to be burned a "dwelling house (*and* other property that is parcel thereto designated by the statute) . . .". (Emphasis added).

It is manifest under the common law and under § 6, *supra*, that the bar and restaurant and the dwelling house were the same identical building and that the burning was the same identical act. Applying the test set forth in *Weinecke, supra*, the same evidence required to convict under Count One was necessary to convict under Count Three and vice versa. Thus, the two counts charged the same offense.

The fifth amendment to the Constitution of the United States, in pertinent part, states, ". . . nor shall any person be subject for the same offense to be twice put in jeopardy . . . ."

In *Ex parte Lange*, 85 U. S. (18 Wall) 163, 21 L. Ed. 872 (1874), the Supreme Court said:

> ... we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it. *Id.*, 173.

In *North Carolina v. Pearce*, 395 U. S. 711, 89 S. Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court observed that the double jeopardy clause provides three related protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And *it protects against multiple punishments for the same offense.* (Emphasis added).

Inasmuch as the Supreme Court in *Benton v. Maryland*, 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969), held that the double jeopardy clause of the fifth amendment to the Constitution is applicable to State prosecutions through the fourteenth amendment, the Supreme Court decisions are controlling in cases presenting double jeopardy issues in this State. Since the appellant was twice punished for the same offense in violation of his constitutional rights the judgment under Count Three will be reversed.

### III.

### *IDENTITY OF THE VICTIMS*

The evidence disclosed that prior to the time of the fire, which occurred around 2:40 a.m. on January 30, 1972, there were seven persons sleeping in the dwelling portion of the building. After the blaze was extinguished, two were missing, Rosalie Ann Poe, age fifteen, and Diane Elizabeth Reichert, age eighteen.

Two bodies were found in the debris. Both were burned and charred beyond recognition and "burst open" from the heat. The deputy medical examiner determined that both of

the deceased were females, and that the cause of death was due to suffocation and burning. No autopsy or scientific tests were performed to identify the victims. One of the victims had a small chain necklace around her neck which was similar to the one Diane Reichert was wearing when last seen alive. The bodies of the two females taken from the burned structure were assumed by all to be Rosalie Ann Poe and Diane Reichert and no further identification was attempted.

The appellant contends that the court erred in denying his motion for judgment of acquittal to the murder charges because the State failed to prove the corpus delicti. In Maryland, the corpus delicti in a homicide case is established if there is proof that the victim is dead and that the death was a result of criminal activity by someone. *Bagley v. State*, 232 Md. 86, 192 A. 2d 53 (1963); *Pierce v. State*, 227 Md. 221, 175 A. 2d 743 (1960). The corpus delicti may be established by direct or circumstantial evidence. *Robinson v. State*, 18 Md. App. 678, 308 A. 2d 734 (1973). In a case such as this, where the victims' bodies were destroyed beyond recognition, circumstantial evidence which tends to prove the identity of the victims is admissible. *See* 40 Am.Jur.2d, Homicide, § 289 (1968). We conclude, therefore, that the evidence and inferences drawable therefrom were sufficient for the jury to find beyond a reasonable doubt that the burned and charred bodies found in the building were the bodies of the same girls whom the appellant was charged with murdering.

## IV.

### ADEQUACY OF THE MIRANDA WARNING

In the landmark case of *Miranda v. State of Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court stated:

The warning of the right to remain silent must be accompanied by the explanation that anything said *can and will* be used against the individual in court. This warning is needed in order to make him aware

not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system . . . that he is not in the presence of persons acting solely in his interest. (Emphasis supplied).

Two oral and one written statement were introduced into evidence against the appellant. Prior to making the oral statements, the police read the appellant his *Miranda* warnings from a card which contained, *inter alia*, the following: "If you choose to answer, your answers *can be* used against you in court." The prelude to the written statement contained a similar warning: "If you want to make a statement and answer our questions, anything you do or say *can be* used against you in a court of law."

The appellant argues that by omitting the words "and will" from the *Miranda* warnings, the statements in question were improperly admitted into evidence against him. He further contends a warning that a statement *can be used* in court against you is not the same as the admonition that it *can and will be used*.

This precise question was raised and disposed of in *Davis v. United States*, 425 F. 2d 673 (9th Cir. 1970). In that case, the court held that a warning card which reads, "Anything you say can be used against you in court" rather than "anything you say can and will be used against you in court" was sufficient to conform to *Miranda* requirements. Of like import is *Craft v. United States*, 403 F. 2d 360 (9th Cir. 1968), where the accused was told that any information elicited from him "could be" instead of "will be" used against him. The court held that the language used left no uncertainty as to the consequences of his making the statements, therefore, the appellant was sufficiently apprised of his rights.

We agree with the rationale of the federal cases, *supra*.

The omission of the words "and will" in the *Miranda* warnings was not sufficient, standing alone, to render the statements inadmissible.

## V.

### *ADMISSIBILITY OF THE PSYCHOLOGICAL STRESS EVALUATION TEST*

The appellant contends that the trial court erred in refusing to admit into evidence the exculpatory results of a psychological stress evaluation test he had taken. According to the evidence adduced the psychological stress evaluation test is basically a voice lie detector test. The principle underlying this test is that the human voice has many frequencies or a number of sound waves. In addition to the voice that can be heard, there are a series of low frequency (FM) sound waves which are inaudible to the human ear. When a person is under stress or lying, these FM sound waves tend to disappear, due to physiological changes in the body. Conversely, when a person is not under stress or is telling the truth, these FM sound waves are more pronounced. In other words, the absence of FM sound waves indicates the person is lying; the presence of FM sound waves indicates the person is telling the truth.

In order to conduct this test, the subject is asked certain questions and the answers are recorded on a tape recorder. This tape is reduced in speed and is fed into a psychological stress evaluator, which is similar to an electrocardiogram machine. Based on the reading of the chart from this machine, the examiner determines whether the subject is lying or telling the truth. This instrument has been in existence for approximately five years. It has a purported accuracy of 85 percent which is comparable to that of a lie detector.

In *State v. LaForest*, 207 A. 2d 429 (1965), the Supreme Court of New Hampshire stated:

> Polygraph and scientific tests to determine deception are familiar investigative devices in

criminal investigation and are employed generally in industry and government for various purposes. . . . Nevertheless the results of these tests have been rejected by the courts as evidence of guilt or innocence of the accused by the overwhelming weight of judicial authority on the ground that these tests have not yet attained sufficient scientific acceptance as an accurate and reliable means of ascertaining truth or deception . . . .

\* \* \*

In this case we follow the general rule that evidence of polygraph tests is inadmissible.

In *Rawlings v. State,* 7 Md. App. 611, 256 A. 2d 704 (1969) this court in adopting the rule enunciated in *LaForest, supra,* stated:

We have examined all available authorities and have concluded that at this stage in the science or the art of lie detecting, the rationale of the general rule expressed above represents the sounder approach to the issue. Accordingly, we find no fault in the lower court's excluding the results of the lie detector tests administered to the appellant . . . . *Rawlings, supra,* 614.

We decline to reconsider our decision in *Rawlings,* as urged by the appellant. The difference, if any, between the psychological stress evaluation test and a lie detector test is too minor and shadowy to justify a departure from our prior decision. A lie detector test by any other name is still a lie detector test.

> *Judgments under counts one and two of indictment 2923 affirmed.*
>
> *Judgment under count one of indictment 3262 affirmed.*
>
> *Judgment under count three of indictment 3262 reversed.*