641 P.2d 531

**SIMON NEUSTADT FAMILY CENTER, INC., a New Mexico corporation, and Commercial Union Assurance Companies, Inc., Plaintiffs-Appellees,**

v.

**Mark BLUDWORTH, Defendant-Appellant.**

**No. 5195.**

Court of Appeals of New Mexico.

Feb. 9, 1982.

Paul S. Wainwright, Gregory V. Pelton, Robinson, Stevens & Wainwright, Albuquerque, for defendant-appellant.

Michael F. Croom, Albuquerque, for plaintiffs-appellees.

## OPINION

NEAL, Judge.

Plaintiffs sued defendant for conversion. The jury returned a verdict for Simon

Neustadt Family Center, Inc. in the amount of $19,403.00 and Commercial Union Assurance Companies, Inc. in the amount of $25,000.00. Judgment was entered in accordance with the verdict and defendant appeals raising the following issues:

1. Supermarkets of New Mexico, Inc., an indispensable party, was not joined.

2. The trial court erred in refusing to admit testimony concerning the results of a psychological stress evaluation (voice stress analysis).

3. The trial court erred in refusing to admit business records concerning the results of the psychological stress evaluation.

4. The business records might also be considered an admission by plaintiffs; this is an additional reason why the business records should have been admitted into evidence.

5. The trial court erred in directing a verdict on defendant's counterclaim.

6. The trial court improperly instructed the jury.

Defendant's claims are without merit. We affirm the judgment of the trial court.

*Point I*

■ Was Supermarkets an indispensable party? Simon Neustadt carried insurance with Commercial Union against employee theft. Simon Neustadt was paid $25,000.00. Originally there were two parties to this suit, Simon Neustadt and defendant. Defendant moved to join Commercial Union claiming it was an indispensable party. This motion was granted by the trial court.

At the close of plaintiffs' case defendant moved to dismiss the $25,000.00 claim of Commercial Union because Supermarkets, an indispensable party, had not been joined. This motion was denied by the trial court.

Simon Neustadt was a subsidiary of Supermarkets. Supermarkets owns all of the stock of Simon Neustadt. The evidence indicated that $25,000.00, the maximum recoverable under the policy, was paid to Simon Neustadt. A release and indemnity agreement was executed and signed by Ken Haynes, president of Simon Neustadt. He is also president of Supermarkets. The evidence indicated that at all times the insurance company dealt with Ken Haynes. Defendant's claim is based on the release and indemnity agreement executed by Ken Haynes which stated that Supermarkets was paid $25,000.00 and assigned the right to recover said amount to the insurance company. Ken Haynes signed the release and indemnity agreement as president of Supermarkets. Defendant claims that Supermarkets was an indispensable party because it was the named insured on the Commercial Union insurance policy. This is not so. The named insured was Simon Neustadt, not Supermarkets. It is clear that Ken Haynes acted on behalf of Supermarkets and Simon Neustadt. Under the facts of this case, it is apparent that Simon Neustadt and Supermarkets acted as a single entity.

N.M.R.Civ.P. 19(a), N.M.S.A.1978 provides:

A person who is subject to service or process shall be joined as a party in the action if (1) *in his absence complete relief cannot be accorded among those already parties*, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest, or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. (Emphasis added.)

We hold that, under the circumstances of the present case, Supermarkets was not an indispensable party. Under Rule 19(a), complete relief could be and was given to the parties present.

Supermarkets' interest was protected by Simon Neustadt; their interest was identical. There is no evidence or reasonable

possibility that the defendant will be subject to future claims by Supermarkets. Defendant's argument exalts labels over practicality. Rule 19 requires practical analysis. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 1968, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936. Defendant in no way demonstrated how he was harmed by the absence of Supermarkets. The trial court properly refused to grant defendant's motion asking for dismissal of the insurance company's claim. All parties necessary to determine the entire controversy and to do complete justice were present.

Defendant's points II, III and IV relate to a psychological stress evaluation.

*Psychological Stress Evaluation (PSE)*

Defendant claims that (1) the trial court erred in refusing to allow the PSE evaluator to testify concerning the results of the test; (2) the trial court erred in refusing to allow the introduction of business records containing the results of the PSE test; and (3) the business records contained in the test results were admissions and therefore admissible on that basis.

The trial court refused to admit any evidence of the test results because:

1. The person offered to present the results was not an expert.

2. Even if he was an expert, psychological stress analysis is not recognized as a true science in New Mexico.

3. The prejudice stemming from the introduction of such evidence would outweigh any probative value.

We hold that, under the circumstances of this case, the trial court correctly refused to allow any evidence of the PSE results.

Because of the importance of the issue and the fact that the question is likely to arise again, we will discuss the matter in detail.

*PSE*

■ The psychological stress evaluation and the polygraph test are based on the theory that an individual will undergo certain physiological changes when he is not telling the truth. These changes can be monitored and interpreted. The polygraph test measures changes in the subject's heartbeat, respiration and perspiration. The PSE test measures changes in the subject's voice. The human voice has two components, amplitude modulation and frequency modulation. Frequency modulation is inaudible and is related to the vibrations of various muscles used in speech. It has been shown that increased stress affects the frequency modulation component.

The PSE measures this change. It is designed to work with an extremely sensitive recorder. Once a statement is recorded it is played into the PSE. The PSE takes electronically transduced speech patterns from the tape recorder, analyzes them, and registers the results on a continually unwinding reel of chart paper. Then follows the crucial part of the operation: evaluation of the results by the operator-expert. PSE testing, like polygraph testing, depends to a large degree on the skill of the evaluator. PSE, the polygraph or any "lie detection device" cannot detect deception per se. These devices only monitor physiological changes produced by stress. It is the responsibility of the examiner to interpret these changes and decide whether they are produced by deception-induced stress or by other causes.

PSE differs from the polygraph in a number of ways. Unlike the polygraph it need not be hooked up to the subject. Thus, any stress created by being connected to a machine is eliminated. PSE has more flexibility because, unlike the polygraph, it is not limited to "yes" or "no" answers. PSE can analyze a previously taped recording. The flexibility of PSE gives it an advantage many people fear; the evaluation can be done without the subject's knowledge. *See* Kenety, *The Psychological Stress Evaluator: The Theory, Validity, and Legal Status of an Innovative "Lie Detector"*, 55 Ind.L.J. 349 (1980).

The trial court framed its ruling in terms of the test governing the admission of polygraph results enunciated in *State v. Dorsey*, 88 N.M. 184, 539 P.2d 204 (1975). *Dorsey* held that polygraph results are admissible

when evidence is introduced concerning (1) qualifications and expertise of the polygraph operator; (2) reliability of the testing procedure employed as approved by authorities in the field; and (3) the validity of the test made on the subject. Because of the similarity between the polygraph and PSE, we hold that the three prong test of *Dorsey* must also be met when a party wishes to introduce evidence of the results of a psychological stress evaluation. Determining whether the *Dorsey* test is met is discretionary and the trial judge's ruling will not be disturbed on appeal unless there has been an abuse of discretion. *State v. Brionez*, 91 N.M. 290, 573 P.2d 224 (Ct.App.1977).

### 1. *Qualifications of the Expert*

■ The trial court refused to recognize the psychological stress evaluator as an expert. This effectively precluded the introduction of any evidence obtained from the test. The determination of the qualifications of an expert is a question for the trial judge. *Brionez, supra.*

■ We hold that the trial court did not err in refusing to accept the operator as an expert. The psychological stress evaluator had four years experience in operating PSE. He received three weeks of training by the manufacturer of PSE and six months training under another operator. He was not a licensed polygrapher, had no training in psychology or medicine, and testified he could not determine if a person was psychologically fit to take the test. *State v. Alderete*, 86 N.M. 176, 521 P.2d 138 (Ct.App.1974) discusses guidelines to be used in determining a polygrapher's qualifications. Although these qualifications are not legal requirements (see concurring opinions of Judge Wood and Judge Lopez) they may be helpful to a trial court. Like the polygraph, the most important factor involved in the use of PSE is the ability, experience, education and integrity of the examiner himself. Reid & Inbau, Truth and Deception, at 4 (1966) cited in *Alderete, supra.*

### 2. *Reliability of PSE*

■ *Dorsey, supra*, applies the general rule governing the judicial admission of scientific evidence first enunciated in *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013, 34 A.L.R. 145 (D.C.Cir.1923). *Frye* was relied on in *State v. Trimble*, 68 N.M. 406, 362 P.2d 788 (1961). *Frye* held that for expert testimony concerning scientific evidence to be admissible the scientific technique must have gained general acceptance in the particular field in which it belongs. At some point, a new scientific technique becomes reliable enough to be used in court. Reliability and relevancy are inextricably linked; once the technique is shown to be reliable it is relevant to prove what it purports to prove. Reliability and relevancy are implicit in the language of *Frye* :

> Just when a scientific principle or discovery crosses the line between the experimental and demonstrable stages is difficult to define. Somewhere in this twilight zone the evidential force of the principle must be recognized, and while courts will go a long way in admitting expert testimony deduced from a well-recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.

The link between reliability and relevancy is discussed in Romero, *The Admissibility of Scientific Evidence Under the New Mexico and Federal Rules of Evidence*, 6 N.M. L.R. 187 (1976). Romero says: "Whether scientific evidence has any probative value, or, in the terms of Rule 401 any tendency to prove credibility, is the critical question." *See also*, Strong, *Questions Affecting the Admissibility of Scientific Evidence*, 1970, U.Ill.L.F. 1, 5–6: "Scientific evidence raises what is essentially a question of relevancy." In *State v. Beachum*, 96 N.M. 566, 632 P.2d 1204 (Ct.App.1981) the Court of Appeals considered memory retrieval by hypnosis and the admissibility of hypnotically refreshed testimony. In his opinion, Judge Donnelly recognized that the reliability of the technique is the crucial issue. In deter-

mining the admissibility of PSE results, the key question is whether or not a psychological stress evaluation is reliable; does it effectively determine credibility?

At present there is diversity of opinion. The most favorable study was done by Michael Kradz, a police officer and polygrapher for Howard County, Maryland Police Department. M. Kradz, *The Psychological Stress Evaluator: A Study* (1972), reprinted in Hearings on the Use of Polygraphs and Similar Devices by Federal Agencies Before Subcomm. on Foreign Operations and Government Information of the House Comm. on Government Operations. 93rd Cong., 1d Sess. 14–15, 225, 228, 435–436 (1974). [Moorhead hearings.] Kradz tested forty-three suspects and concluded that twenty-seven of the suspects should be cleared and that sixteen should not. Of the twenty-seven cleared by the PSE, twenty-one were later shown to be innocent by independent investigation, while no additional evidence as to guilt or innocence was found with respect to the other six. The guilt of the sixteen not cleared by the PSE was later shown through an independent investigation or confession. Kradz Study, reprinted in Moorhead hearings at 249.

In another study, the authors concluded that "even under conditions of low or moderate stress the PSE was able to function along lines predicted by its manufacturer" and noted that "the PSE holds promise of being a valuable research tool, although more scrutiny is needed to establish the limits of its capabilities." J. Worth & B. Lewis, *An Early Validation Study with the Psychological Stress Evaluator (PSE)* (1972), in Moorhead Hearings, *supra*, at 284.

Two courts that have considered the question have rejected PSE evidence. *Smith v. State*, 31 Md.App. 106, 335 A.2d 527 (1976); *State v. Schouest*, 351 So.2d 462 (LA.1977). We do not follow these cases because both Maryland and Louisiana reject polygraph evidence. Both decisions concluded that PSE was simply another polygraph test and rejected PSE evidence on that ground. New Mexico allows polygraph evidence even in the absence of stipulation

and is the only state which does so. 55 Indiana L.J. at 353 (1980).

To determine admissibility the trial court is invested with discretion to admit or refuse PSE evidence. To admit evidence it must be established that the *Dorsey* test is met. We have considered the fact that a jury is likely to find PSE evidence persuasive and that PSE evidence may impinge upon the traditional functions of a jury. However, we believe that PSE does not differ from a polygraph in this regard. We also recognize that PSE results are not foolproof. We leave it to the sound discretion of the trial court to make certain that the required foundation is laid and that no unfairness results. In rejecting a per se rule of inadmissibility and allowing the trial court discretionary power to admit PSE results, we adhere to the policy expressed in N.M.Evid.R. 102, N.M.S.A.1978 cited in *Dorsey*:

> These rules [of evidence] shall be construed to secure fairness in administration * * * and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

That a diversity of opinion exists regarding the effectiveness of a scientific procedure does not call for a per se rule of inadmissibility. We agree with Professor McCormick's approach. "McCormick * * * believes that disagreement in the scientific community regarding the reliability of a scientific process should go to the weight rather than the admissibility of scientific evidence." Giannelli, *The Admissibility of Novel Scientific Evidence; Frye v. United States*, a Half-Century Later, 80 Colum. L.R. 1197 (1980). *See also, Commonwealth v. Lykus*, 367 Mass. 191, 204, 327 N.E.2d 671, 678 (1975). *McKay v. State*, 155 Tex. Cr.R. 416, 421, 235 S.W.2d 173, 175 (1950).

We conclude that a rule of per se inadmissibility is unnecessarily broad and may result in the exclusion of evidence that may be valuable and accurate. This approach was taken by *Beachum, supra*. We feel it is appropriate in the present case particularly in view of the New Mexico Supreme Court's position on polygraph evidence.

### 3. *Validity of Test on Particular Subject*

■ Once the first two prongs of the *Dorsey* test is introduced, evidence must be introduced establishing that the particular test is valid. This includes testimony that the PSE instrument was functioning properly at the time of the test, and that there was adherence to proper procedures. *United States v. Ridling*, 350 F.Supp. 90, 93 (E.D.Mich.1972). (*Ridling* concerns polygraph test.) The trial court may also consider bias on the part of the operator. Evidence should also be introduced on the subject's psychological fitness to take the test. This should include evidence that the subject was sober and not suffering a great deal of tension from some other source. A subject exhibiting a positive response should be asked if there is anything in his background which could be important. An example is given in which an employee exhibited a positive response when asked if he had stolen a diamond ring. It was later discovered that the man was innocent and his stress was caused by guilty feelings stemming from having lost his mother's diamond ring when he was a child. 55 Ind.L.J. at 372 (1980).

Securing the services of experts to advise counsel and rebut the reliability of the technique generally, or the technique in a particular case, is crucial when a party attempts to introduce PSE evidence. Skillful cross-examination can also insure that a proper result will be reached.

4. Once the three prong test of *Dorsey* is met and the trial court permits PSE evidence, UJI Civ. 2.13, N.M.S.A.1978, concerning the weight to be accorded expert testimony should be given. UJI Civ. 2.13 can be given at the time the expert testifies or with the closing instruction. It can be given both times. This instruction need be given only after the trial court has ruled that the three prong *Dorsey* test has been met and PSE evidence has been admitted.

Psychological stress evaluation (PSE) evidence is admissible within the discretion of the trial court after the three prong *Dorsey* test is met. If the trial court admits the PSE evidence, it must give UJI 2.13.

We hold that the trial court did not err in refusing to allow the proffered expert to testify as to the PSE results.

*Point III*

■ Defendant contends that regularly kept business records containing the PSE results should have been admitted. The trial court properly excluded all evidence of the psychological stress evaluation. Defendant's contention overcomes only the hearsay objection. This ignores the fact that all evidence is subject to Section 403 of the Rules of Evidence, N.M.S.A.1978. *State v. Day*, 91 N.M. 570, 577 P.2d 878 (Ct.App. 1978). Because the trial court properly refused to recognize the operator as an expert the psychological stress evaluation had no probative value; the prejudice which would have resulted from presentation of PSE evidence far outweighed any probative value.

*Point IV*

Defendant urges the admissibility of the business records containing the PSE results on the alternative ground that the business records are admissions, and thus the business records are not hearsay. This contention must fail. Rule 403 applies to all evidence. *Day, supra*. Again, the prejudice which would have resulted from the admission of the business records containing the PSE results outweighed any probative value. The business records containing the PSE results were properly excluded.

*Point V*

Did the trial court err in directing a verdict dismissing defendant's counterclaim?

■ Defendant counterclaimed for payment of amounts owing under a pension plan arrangement created by Simon Neustadt. The evidence was uncontroverted that prior to trial Simon Neustadt paid defendant all amounts owing under the plan. On appeal defendant claims that although complete payment may have disposed of the issue of compensatory damages the issue of punitive damages should have been allowed to go to the jury. Defendant

argues that because Simon Neustadt initially withheld payment pending suit intentional misconduct can be imputed. If reasonable minds can differ as to the conclusion to be reached under the evidence or permissible inferences to be drawn therefrom, the question is one for the jury and it is error to direct a verdict. *Jones v. New Mexico School of Mines*, 75 N.M. 326, 404 P.2d 289 (1965). In ruling on a motion for a directed verdict the court will consider the evidence and inferences therefrom most favorable to the party resisting the motion. *Sandoval v. Cortez*, 88 N.M. 170, 538 P.2d 1192 (Ct.App. 1975). The trial court directed the verdict dismissing the counterclaim because the evidence was uncontroverted that all amounts owing had been paid. As to punitive damages the trial court ruled that although there was testimony that Simon Neustadt initially withheld payment pending suit, defendant introduced no evidence that the payment was late. Additionally, punitive damages are not allowed in the absence of actual damages. *Robison v. Katz*, 94 N.M. 314, 321, 610 P.2d 201 (1980). *Christman v. Voyer*, 92 N.M. 772, 595 P.2d 410 (1979). Because there was no basis in fact or law for defendant's counterclaim the trial court properly directed a verdict dismissing the counterclaim.

*Point VI*

Did the trial court err in giving certain instructions and failing to give other instructions?

Defendant contends that the statement of the case instruction was improper in that it did not set forth the essential elements for recovery. Defendant claims the instruction concerning the insurance company's claim was repetitious and improperly emphasized the plaintiffs' case. Defendant also claims that the instruction concerning damages was improper, and that the trial court erred when it refused to give the ordinary care instruction.

 We find these contentions to be without merit. All instructions must be read together and if, when so considered, they fairly present issues and law applicable

thereto, they are sufficient. *Webb v. Webb*, 87 N.M. 353, 533 P.2d 586 (1975). A reviewing court considers the instructions as a whole. *American Telephone and Telegraph Company of Wyoming v. Walker*, 77 N.M. 755, 427 P.2d 267 (1967). Instructions which are not supported by the evidence or present a false issue should not be given. *State v. Atchison, Topeka and Santa Fe Railway Company*, 76 N.M. 587, 417 P.2d 68 (1966). A party complaining of faulty instructions must show prejudice before reversal is warranted. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970).

 The statement of the case instruction did not set out the essential elements for recovery under the claim. However, the elements were set out in the conversion instruction. Considered as a whole the instructions properly set out the necessary elements. Instruction number two explained the insurance company's burden to show that an insurance contract was in force, that defendant had wrongfully taken money, and that the insurance company was paid the $25,000.00 claim. This instruction explained what Commercial Union had to prove. It was not repetitious. It did not improperly emphasize plaintiff's case. The instruction on damages was clear and correct. (The requested damage instruction, UJI 14.2, concerns products liability and res ipsa loquitur, and has absolutely no application in this case. Presumably defendant meant UJI 18.2, which concerns damages.) Defendant claims that statements in a number of instructions improperly state that Commercial Union paid Simon Neustadt $25,000.00. Defendant claims that Supermarkets was paid $25,000.00, and thus incorrect facts were before the jury. Assuming *arguendo* there was a misstatement no prejudice occurred. The trial court correctly refused to give the ordinary care instruction. Defendant claims it is necessary in all tort actions. To submit such an instruction to the jury would have injected a false issue; ordinary care was in no way applicable to this case. The instructions read as a whole fairly presented the issues and applicable law. Defendant was not prejudiced in any way and his claims are unfounded.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN and LOPEZ, JJ., concur.