604 A.2d 483

**Guy Lancaster RICHMOND**

v.

**STATE of Maryland.**

**No. 59, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 13, 1992.

258

Michael J. Moran, Assigned Public Defender, Towson, for appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

This case concerns the protection afforded by the Double Jeopardy Clause of the Fifth Amendment against multiple punishments for the same offense.

## I.

On February 5, 1987, a fire broke out in a two story apartment building located at Dallas Place in Temple Hills. The building contained approximately ten units. The fire originated in the ground floor apartment of Martha Gobert and quickly spread to the apartment located across a common hallway, occupied by Wanda Pfeiffer, and to the apartment located above the Gobert unit, occupied by Evelyn Saunders. All three apartment units were substantially damaged before the fire could be extinguished.

An official investigation of the fire disclosed that Guy L. Richmond, Jr., the appellant, had arranged for three of his confederates to set fire to Gobert's apartment. Richmond and Gobert worked for the same employer, and Richmond

recently had been suspended from his job because of a work place grievance filed against him by Gobert.

On October 19, 1987, after a bench trial before the Circuit Court for Prince George's County, Richmond was convicted of three separate counts of an indictment, charging violation of Maryland Code (1957, 1982 Repl.Vol.) Article 27, § 6 [1] for procuring the burning of the "dwelling houses" of Gobert, Pfeiffer, and Saunders. Thereafter, he was sentenced to 15 years imprisonment on each count with the terms to run consecutively. The Court of Special Appeals affirmed his convictions and sentences in an unreported opinion filed on December 22, 1988.

On March 30, 1990, Richmond sought post conviction relief pursuant to Md.Code (1957, 1987 Repl.Vol.) Art. 27, §§ 645A–645J, alleging, *inter alia,* that he had been denied effective assistance of appellate counsel in his appeal from his convictions and sentences because no challenge based upon the Double Jeopardy Clause was made to the multiple sentences imposed upon him for what he asserts was a single offense. The hearing court agreed that Richmond had been denied effective assistance of appellate counsel and granted him a belated appeal on the double jeopardy issue. Such an appeal was filed to the Court of Special Appeals. We issued a writ of certiorari on our own motion, prior to argument before the intermediate appellate court, to consider the important issue presented by the belated appeal.

## II.

Richmond contends that the burning of three apartments was the result of one criminal act, that it is but

---

1. Article 27, § 6 provides:
   "Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, whether the property of himself, or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not more than thirty years."

one offense proscribed by Art. 27, § 6, and that the imposition of multiple sentences for this one offense violates double jeopardy principles. The Double Jeopardy Clause of the Fifth Amendment[2] protects against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487, 496 (1989); *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969); *Randall Book Corp. v. State*, 316 Md. 315, 323, 558 A.2d 715, 719 (1989); *Brown v. State*, 311 Md. 426, 431, 535 A.2d 485, 487 (1988). Because Richmond was subjected to only one prosecution, his contention deals with the prohibition against multiple punishments for the same offense. Multiple punishment challenges generally arise in two different sets of circumstances: those involving two separate statutes embracing the same criminal conduct, and those involving a single statute creating multiple units of prosecution for conduct occurring as a part of the same criminal transaction. *Gore v. United States*, 357 U.S. 386, 393–94, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405, 1411 (1958) (Warren, C.J., dissenting); *Randall Book Corp.*, 316 Md. at 324, 558 A.2d at 720; *Brown*, 311 Md. at 431, 535 A.2d at 487. Richmond's contention in the instant case is of the second type.

■ Whether a particular course of conduct constitutes one or more violations of a single statutory offense depends upon the appropriate unit of prosecution of the offense and this is ordinarily determined by reference to legislative intent. *Brown*, 311 Md. at 432, 535 A.2d at 488. *See Missouri v. Hunter*, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958); *Bell v. United States*, 349 U.S.

**2.** The Double Jeopardy Clause is applicable to state prosecutions by virtue of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707, 716 (1969).

81, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *United States v. Universal Corp.*, 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260 (1952); *Ebeling v. Morgan*, 237 U.S. 625, 35 S.Ct. 710, 59 L.Ed. 1151 (1915). *See also Satterfield v. State*, 325 Md. 148, 599 A.2d 1165 (1992); *Dickerson v. State*, 324 Md. 163, 596 A.2d 648 (1991).

When we seek to ascertain and effectuate legislative intent, "we look first to the words of the statute, read in light of the full context in which they appear, and in light of external manifestations of intent or general purpose available through other evidence." *Cunningham v. State*, 318 Md. 182, 185, 567 A.2d 126, 127 (1989). *See State v. Bricker*, 321 Md. 86, 92, 581 A.2d 9, 12 (1990); *Davis v. State*, 319 Md. 56, 60, 570 A.2d 855, 857 (1990); *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513, 525 A.2d 628, 632 (1987). In doing so, we give the language of the statute its natural and ordinary signification, bearing in mind the statutory aim and objective. *Harford County v. University*, 318 Md. 525, 529, 569 A.2d 649, 651 (1990); *NCR Corp. v. Comptroller*, 313 Md. 118, 124–25, 544 A.2d 764, 767 (1988); *Boulden v. Mayor*, 311 Md. 411, 414, 535 A.2d 477, 479 (1988); *In Re Ramont K.*, 305 Md. 482, 484, 505 A.2d 507, 508 (1986). Moreover, we approach the analysis of the language from a "commonsensical," rather than a technical perspective, *United States v. Universal Corp.*, 344 U.S. at 221, 73 S.Ct. at 229, 97 L.Ed. at 264; *Dickerson*, 324 Md. at 171, 596 A.2d at 652, always seeking to avoid giving the statute a strained interpretation or one that reaches an absurd result. *Potter v. Bethesda Fire Dep't*, 309 Md. 347, 353, 524 A.2d 61, 64 (1987); *Schweitzer v. Brewer*, 280 Md. 430, 438–39, 374 A.2d 347, 352 (1977). We must assume that the words of the statute defining the crime of unlawfully burning property have the meaning naturally given them in ordinary usage, in the absence of anything to indicate contrary intent; there being no room for construction, if the language is plain and unambiguous. *Wimpling v. State*, 171 Md. 362, 370, 189 A. 248, 252 (1937).

■ It is manifest from the language employed in Art. 27, § 6 that the General Assembly intended the unit of prosecution to be "any dwelling house" burned. The issue before us is not thereby resolved, however, because the term "dwelling house" is not defined in the statute; we must determine whether each individual apartment unit burned constitutes a separate dwelling house.

By Ch. 138 of the Acts of 1809 the Legislature prescribed punishments for various common law crimes. Section 5 of that Act dealt with the crime of arson, which at common law is the willful and malicious burning of the dwelling house of another, either by night or by day. R. Perkins and R. Boyce, *Criminal Law*, 273–74 (3d ed. 1982); 3 C. Torcia, *Wharton's Criminal Law*, § 345 (14th ed. 1980). It merely referred to the common law crime and provided for the punishment of death or, alternatively, a maximum of 20 years in the penitentiary. Ch. 138, § 5 of the Acts of 1809. *See Cochrane v. State*, 6 Md. 400, 405 (1854) (The Act of 1809, ch. 138, only provides for the punishment of the crime of arson without defining it; the crime is therefore left as it stood at common law). In 1904, the General Assembly slightly expanded upon the common law definition of arson by making illegal the burning of one's own dwelling house if the intent in burning it was to injure or defraud. Ch. 267, § 6 of the Acts of 1904.

The first substantive attempt to codify the elements of the crime of arson occurred in 1929. Ch. 255, § 6 of the Acts of 1929. The wording of the statute in force today, Art. 27, § 6, remains unchanged since that time.[3] While retaining the common law definition of arson in Art. 27, § 6, other sections of Art. 27 have been added by the Legislature to cover burning of buildings not specified in § 6, burning of personal property of another, burning goods with the intent to defraud an insurer, attempted arson, and other criminal burnings. Art. 27, §§ 7–10. The language

---

3. The penalties under Art. 27, § 6, however, have been amended. Ch. 514 of the Acts of 1969.

of Art. 27, § 6 prohibiting the burning of a "dwelling house," however, which was adopted from the common law, has not been varied.

Thus, Maryland has retained the common law definition of arson in Art. 27, § 6.[4] *Hannah v. State,* 3 Md.App. 325, 329–30 n. 1, 239 A.2d 124, 127 n. 1, *cert. denied,* 251 Md. 749 (1968). Sir William Blackstone explained the reasons why arson is considered such a serious crime:

> "ARSON, *ab ardendo,* is the malicious and wilful burning of the house or outhouses of another man. This is an offence of very great malignity, and much more pernicious to the public than simple theft: because, first, it is an offence against that right, of habitation, which is acquired by the law of nature as well as by the laws of society; next, because of the terror and confusion that necessarily attends it; and, lastly, because in simple theft the thing stolen only changes it's [sic] master, but still remains *in esse* for the benefit of the public, whereas by burning the very substance is absolutely destroyed."

4 W. Blackstone, Commentaries *220. Thus, at common law, arson is an offense against the security of habitation or occupancy, rather than against ownership or property.[5] 3 C. Torcia, *Wharton's Criminal Law* § 345 (14th ed. 1980). Expounding on what constitutes a "dwelling house," Blackstone stated that "if a landlord or reversioner sets fire to his own house, of which another is in possession under a lease from himself or from those whose estate he hath, it shall be accounted arson; for, during the lease, the house is

---

**4.** Furthermore, if a term such as "dwelling house" is not otherwise defined by statute, the common law meaning is assumed to be intended. 3 C. Torcia, *Wharton's Criminal Law* § 352 (14th ed. 1980).

**5.** This view is reflected in other sections of the Maryland Code which refer to arson as a "crime of violence." Md.Code (1957, 1992 Repl. Vol.), Art. 27, §§ 441(e), 643B(a). Although our predecessors stated in *Wimpling v. State,* 171 Md. 362, 189 A. 248 (1937), that under the arson statute, the offense was against the property, the case merely held that an indictment charging arson could allege ownership in the owner of the fee even though another may occupy it as a tenant. *Id.* at 372, 189 A. at 253.

the property of the tenant." 4 W. Blackstone, Commentaries *221–22 (footnote omitted). Thus, since each leased apartment is the property of a separate tenant, and a burning of that property, whether by the landlord or some other individual, constitutes arson, each separate apartment burned constitutes a separate unit of prosecution.

The language of Art. 27, § 6 further confirms the conclusion that each individual apartment burned constitutes a separate dwelling house and a separate offense of arson. Section 6 states that "[a]ny person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of *any* dwelling house" shall be guilty of arson (emphasis added). We have previously construed the use of the word "any" in a criminal statute to mean "every" and to support a legislative intent authorizing multiple convictions. *Brown*, 311 Md. at 435–36, 535 A.2d at 489–90. In *Brown, supra*, the issue was whether the defendant could be sentenced for multiple counts of use of a handgun in the commission of a crime of violence arising out of a single robbery involving several victims. The statute at issue was Md.Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.), Art. 27, § 36B(d), which stated, with emphasis added, that "[a]ny person who shall use a handgun ... in the commission of *any* felony or *any* crime of violence" is guilty of a handgun use offense. We held that the use of the word "any" before crime of violence meant "every" and indicated that the unit of prosecution was the crime of violence, not the criminal transaction. *Id.* at 434–36, 535 A.2d at 489–90. Thus, where there were two victims, there were two crimes of violence and two separate crimes of using a handgun to commit a crime of violence. Similarly, in the instant case, the use of the word "any" before the phrase "dwelling house" indicates that the Legislature intended the unit of prosecution to be each dwelling house burned.

Generally, a structure which qualifies as a dwelling house for the purpose of burglary also qualifies as a dwelling house for the purpose of arson. 3 C. Torcia, *Wharton's*

*Criminal Law,* § 350 (14th ed. 1980). In describing what places could be subjects of a burglary, Blackstone observed, "[a] chamber in a college or an inn of court, where each inhabitant hath a distinct property, is, to all other purposes as well as this, the mansion-house of the owner." 4 W. Blackstone, Commentaries *225.

Several cases dealing with convictions for breaking and entering a dwelling house indicate that one separate portion of a building can independently be a dwelling house subject to being invaded by the offender. In *Jones v. State,* 2 Md.App. 356, 234 A.2d 625 (1967), Jones broke into a building where two floors were occupied by a club and one floor was used as an apartment by an individual. The Court of Special Appeals held that the part of the building used as an apartment was a dwelling house and the part used as a club was a storehouse. *See id.* at 360 n. 1, 234 A.2d at 627 n. 1. In *Herbert v. State,* 31 Md.App. 48, 354 A.2d 449 (1976), the defendant walked down a row of motel rooms, entered Room 66 for several minutes, and then attempted to enter Room 76. He was convicted of burglary of Room 66 and attempted storehouse breaking of Room 76. The court upheld his conviction for burglary of Room 66 because the State had proven that one room of the motel to be a dwelling house. *Id.* at 52, 354 A.2d at 451–52. Thus, for the purposes of satisfying a necessary element of the crime of burglary, a separate unit of a building may be a separate dwelling house. These cases support the conclusion that each separate apartment is a dwelling house under Art. 27, § 6. *See also* R. Perkins and R. Boyce, *Criminal Law* 257 (3d ed. 1982) ("There may be more than one dwelling under the same roof and this applies not only to apartment houses ... each apartment in a tenement house is 'the dwelling house of the particular occupant' " (footnote omitted)).

*Smith v. State,* 31 Md.App. 106, 355 A.2d 527 (1976), upon which Richmond relies, is distinguishable from the instant case. Smith burned a building in which Milton Poe used one floor as his residence and one floor as a bar and restaurant. The court there reasoned that the use of one

part of the building as a dwelling gives the character of a dwelling house to the entire building if there is internal communication between the part used for dwelling purposes and the part used for other purposes. *Id.* at 115, 355 A.2d at 533. For that reason, the court held that the burning of the building consisting of Poe's dwelling and his shop constituted one offense.

There are several distinctions between *Smith* and the present case. First, in *Smith*, there was internal communication between the two floors. No evidence of such communication between the different apartments exists in the instant case. Second, *Smith* involved a dwelling house and an adjoining commercial establishment, while the present case involves three distinct apartments occupied by different tenants. In *Smith*, the same person's interests were involved in the different floors of the building. In the present case, each separate apartment constituted the separate habitation of different tenants.

▮▮▮ Richmond next contends that the State was required to prove that he possessed the specific intent to burn, or *mens rea* that the act of burning shall have been "wilful and malicious" as to each apartment unit, citing *Borza v. State*, 25 Md.App. 391, 400, 335 A.2d 142, 148 (1975). The intent requirement as stated by Perkins and Boyce undermines that proposition:

"Lord Coke, writing in the early 1600's said that the 'law doth sometime imply, that the house was burnt maliciously and voluntarily,' giving as an illustration the instance of a fire spreading and causing damage beyond that actually intended. It is not common-law arson for a dweller to burn his own dwelling, and this has given rise to the outstanding example of unintentional arson; for if such a fire obviously creates an unreasonable fire hazard for other nearby dwellings, and any of these is actually burned, common-law arson has been committed even if the wrongdoer did not actually intend the consequence and may have hoped it would not happen. An intentional act creating an obvious fire hazard to the dwelling of

another, done without justification, excuse or mitigation, might well be characterized as 'wilful' (a word of many meanings), and would certainly be malicious, but as the law has developed it is a mistake to assume that the phrase 'wilful and malicious,' when found in the definition of common-law arson, adds some distinct requirement not included in the word 'malicious' alone."

R. Perkins and R. Boyce, *Criminal Law* 274–75 (3d ed. 1982) (footnotes omitted). *See* M. Wingersky, *Clark and Marshall on the Law of Crimes* 898–99 (1958) ("[O]n the principle that a man is presumed to have intended the natural and probable consequences of his voluntary acts, if a man does an unlawful act, the natural tendency of which is to set fire to and burn a house, and such a consequence follows, the burning is to be regarded as intentional and malicious.); 3 C. Torcia, *Wharton's Criminal Law*, § 348 (14th ed. 1980) ("[T]he 'reckless' burning of the dwelling house of another may amount to arson, as where the defendant in burning his own house or other property on a windy day causes the dwelling house of another, which is in close proximity thereto, to be burned.") Consequently, setting a fire with reckless and wanton disregard for the consequences satisfies the wilful and malicious requirement of Art. 27, § 6. *DeBettencourt v. State*, 48 Md.App. 522, 532, 428 A.2d 479, 485, *cert. denied*, 290 Md. 713 (1981). Clearly, setting fire to one apartment in a multiple unit apartment building satisfies this requirement. Moreover, the fact that Richmond was convicted of procuring the arson is of no consequence. Richmond's act of procuring is, in itself, a substantive offense, and he is subject to the same punishment as though he, himself, had actually perpetrated the burning. *See Butina v. State*, 4 Md.App. 312, 317, 242 A.2d 819, 822 (1968), *cert. denied*, 251 Md. 748 (1969).

Providing for multiple punishment when there are multiple victims also comports with the notion that the punishment for criminal conduct should be commensurate with responsibility. *Brown*, 311 Md. at 436, 535 A.2d at 490. It

makes sense that the Legislature would provide for a greater penalty for setting fire to an apartment building, containing many separate residences, than for setting fire to a single home. The language of the statute clearly reflects the legislative intention that the unit of prosecution be each dwelling house burned. Each of the separate apartments in the building, occupied by separate tenants, constituted a separate dwelling house. Thus, each apartment burning was a separate offense of arson.

Finally, Richmond argues that the rule of lenity applies because it is unclear whether the General Assembly intended to permit multiple convictions and multiple punishments under circumstances present here. When legislative intent can be gathered from the various sources to which we have referred, that intent will be enforced, and the concept of lenity does not become an operable factor. *Albernaz v. United States*, 450 U.S. 333, 342-43, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275, 283-84 (1981). Article 27, § 6 proscribes the burning of any dwelling house. We hold that the legislature intended the unit of prosecution to be each apartment unit burned. As we pointed out in *Dillsworth v. State*, 308 Md. 354, 365, 519 A.2d 1269, 1274 (1987) (quoting *Albernaz*, 450 U.S. at 342, 101 S.Ct. at 1144, 67 L.Ed.2d at 284), "[l]enity ... serves only as an aid for resolving an ambiguity; it is not to be used to beget one." Since the legislative intent is clear, the rule of lenity is inapplicable. *See Randall Book Corp.*, 316 Md. at 327, 558 A.2d at 721; *Brown*, 311 Md. at 436 n. 8, 535 A.2d at 490 n. 8.

For all of the foregoing reasons, Richmond's convictions and sentences for procuring the burning of three separate apartments within one apartment building do not offend the Double Jeopardy Clause.

JUDGMENTS AFFIRMED, WITH COSTS TO BE PAID BY APPELLANT.